**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) GREENLITE HOLDINGS, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No.   5:21-cv-00646-HE |
| | § | |
| (1) THIRD COAST INSURANCE COMPANY | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

---

**DEFENDANT THIRD COAST INSURANCE COMPANY'S ANSWER TO PLAINTIFF GREENLITE HOLDINGS, LLC'S FIRST AMENDED PETITION**

---

**TO THE HONORABLE UNITED STATES DISTRICT COURT**:

Defendant Third Coast Insurance Company ("Third Coast") files this Original Answer to Plaintiff Greenlite Holdings, LLC's ("Greenlite Holdings") First Amended Petition [Doc. 1, Ex. 7]:

1.      Upon information and belief, Third Coast admits the allegations contained in Paragraph 1 of Greenlite Holdings' First Amended Petition.

2.      Third Coast admits the allegations contained in Paragraph 2 of Greenlite Holdings' First Amended Petition.

3.      Third Coast admits the allegations contained in Paragraph 3 of Greenlite Holdings' First Amended Petition.

4.      Third Coast admits the allegations contained in Paragraph 4 of Greenlite Holdings' First Amended Petition.

5.     Upon information and belief, Third Coast admits the allegations contained in Paragraph 5 of Greenlite Holdings' First Amended Petition.

6.     Upon information and belief, Third Coast admits the allegations contained in Paragraph 6 of Greenlite Holdings' First Amended Petition.

7.     Upon information and belief, Third Coast admits the allegations contained in Paragraph 7 of Greenlite Holdings' First Amended Petition.

8.     Third Coast admits the allegations contained in Paragraph 8 of Greenlite Holdings' First Amended Petition.

9.     Third Coast admits that Greenlite Holdings was insured under a commercial insurance policy issued by Third Coast (Policy No. STR6-031042-20) with effective dates of February 24, 2020 to February 24, 2021 (the "Policy"). Third Coast denies the remaining allegations contained in Paragraph 9 of Greenlite Holdings' First Amended Petition.

10.    Third Coast admits that the Policy extends coverage to the October 26, 2020, storm event, subject to its terms, conditions and limitations. Third Coast denies the remaining allegations contained in Paragraph 10 of Greenlite Holdings' First Amended Petition.

11.    Third Coast admits that on October 26, 2020 the property known as The Restoration at Candlewood Apartments f/k/a City Heights North located at 8501 Candlewood Dr., Oklahoma City, Oklahoma 73132 (the "Property") sustained interior water damage. Third Coast denies the remaining allegations contained in Paragraph 11 of Greenlite Holdings' First Amended Petition.

12.     Third Coast admits that the Policy provides coverage for certain interior water damage and rental value losses, subject to its terms, conditions and limitations. Third Coast denies the remaining allegations contained in Paragraph 12 of Greenlite Holdings' First Amended Petition.

13.     Third Coast admits the allegations contained in Paragraph 13 of Greenlite Holdings' First Amended Petition.

14.     Third Coast denies the allegations contained in Paragraph 14 of Greenlite Holdings' First Amended Petition.

15.     Third Coast denies the allegations contained in Paragraph 15, including subparts a – k, of Greenlite Holdings' First Amended Petition.

16.     Third Coast denies the allegations contained in Paragraph 16 of Greenlite Holdings' First Amended Petition.

17.     Third Coast denies the allegations contained in Paragraph 17 of Greenlite Holdings' First Amended Petition.

 For further answer and defense, Third Coast states as follows:

### AFFIRMATIVE DEFENSES

1.     Greenlite Holdings has failed to satisfy all conditions precedent to the recovery under the Policy, including but not limited to failing to take all reasonable steps to safeguard the Property from further damage.

2.      Greenlite Holdings has failed to satisfy all conditions precedent to the recovery of Replacement Cost Value coverage under the Policy. Specifically, Greenlite Holdings has not permanently repaired, rebuilt, or replaced the damaged or destroyed

3

Property. Therefore, Greenlite Holdings' recovery, if any, is limited to Actual Cash Value (replacement cost less depreciation) of the property damaged or destroyed.

3.     Third Coast denies that Greenlite Holdings is owed any additional sums under the Policy for asbestos removal. Specifically, Greenlite Holdings is not entitled to any additional sums under the Policy for asbestos removal because the Property was not physically damaged by one of the following Listed Perils: Fire; Explosion; Lighting; Windstorm (including hail); Collapse; Water Damage; Direct Impact of a vehicle, aircraft, or vessel; Riot or civil commotion; vandalism or malicious mischief; or accidental discharge of fire protective equipment.

4.     Greenlite Holdings' damages, if any, are the result of acts or omissions, fault, negligence, breach of contract, violation of statute, or breach of duty, by or of persons, entities, or parties over whom Third Coast had no control and for whom Third Coast had no legal responsibility. Such acts or omissions were a new and independent intervening or superseding cause of Greenlite Holdings' alleged injuries or damages.

5.     Third Coast asserts that the occurrence in question and/or the alleged damages were proximately and/or producing caused, in whole or in part, by the acts, omissions, fault, negligence, or other conduct of third parties, persons, or entities over whom Third Coast neither have a right of control nor for whom Third Coast are legally responsible.  Furthermore, to the extent the acts and/or omissions for which Greenlite Holdings complain were committed by persons subject to Third Coast's supervision and control, Greenlite Holdings' claims are barred against Third Coast, in whole or in part,

because said persons acted beyond the scope of their authority to act on behalf of Third Coast.

6.     Greenlite Holdings' damages, if any, are the result, in whole or in part, of either Greenlite Holdings' own fault, acts or omissions, negligence or breach or that of its agents, representatives, or employees.

7.     Third Coast asserts that in the event Third Coast is found liable to Greenlite Holdings, any such liability being expressly denied, Third Coast is entitled to contribution, credit, and/or indemnity, as provided by the laws and statutes of the State of Oklahoma, including, but not limited to, the provisions of OKLA. STAT. tit. 12, § 832 and OKLA. STAT. tit. 23, §§ 12–15, as well as submitting the issue of proportionate fault and/or proportionate responsibility to be assigned by the trier of fact, as well as other applicable laws and statutes.

8.     Greenlite Holdings failed to exercise reasonable care to avoid and mitigate the damages they seek to recover from Third Coast, which damages Third Coast disputes and, accordingly, Third Coast is not liable for any damages that could and should have been avoided or mitigated.

9.     Third Coast pleads the doctrine of comparative good faith and fair dealing as an equitable factor in adjudging the parties' relative positions in this case.

10.     In the event Greenlite Holdings has any damages, which is expressly denied, Greenlite Holdings has the burden of establishing that a covered peril was the efficient proximate cause of the loss and/or damage.

11.     Any punitive damages award is capped pursuant to OKLA. STAT. tit. 23, § 9.1.

12.     To the extent applicable, Third Coast is entitled to offset/credit for all applicable deductibles, limits of insurance, and sub-limits of insurance under the Policy.

13.     Greenlite Holdings' claims are barred and/or limited to the extent that the alleged losses and damage for which it seeks coverage were not fortuitous, were already in progress, or were or should have been known to Greenlite Holdings before the time at which it entered the Contract with Third Coast.

14.     Greenlite Holdings' claims are barred or limited by the conditions, definitions, exclusions, limitations, and other terms/provisions of the insurance Policy. Third Coast incorporates herein by reference the entirety of the Policy, and to the extent necessary, asserts affirmatively every term, condition, definition, exclusion, limitation, and every other provision of the Policy, including, but not limited to, the $25,000 deductible, the $25,000 limit of liability for asbestos removal, and the 365-day replacement cost value condition described in the "Replacement Cost Form." Further, by not listing a particular Policy term, provision, defense, condition, exclusion, and/or limitation herein, Third Coast does not waive any of its rights under the Policy or applicable law and are not prejudiced in any way.

15.     The Policy's insuring language in the "Property Coverage Form" (NC R1 00 08 19) describes "Covered Property" as follows:

## PROPERTY COVERAGE FORM
### (NC R1 00 08 19)

Various provisions in this Policy restrict coverage. Read the entire Policy, including any endorsements, carefully to determine rights, duties and why is and is not covered. Words and phrases that appear in quotation marks have special meaning; refer to Section G. (Definitions).

**A. INSURING AGREEMENT:** The Company will pay for direct physical loss or damage to Covered Property at an Insured Location as described in the most recent Statement of Values caused by or resulting from a Covered Cause of Loss. Notwithstanding any other provision in this Policy, the Company will not pay for loss to Covered Property due to any "Diminution in Value", whether the Covered Property is repaired, partially repaired or not repaired.

**B. COVERAGE:** Coverage is provided for Covered Property and Covered Costs and Expenses, as described in Section B.1. and B.2., for which the Named Insured has an insurable interest, unless excluded in Section C. Coverage applies only when a Sublimit of Insurance is shown in the Coverage Declarations for the specific type of Covered Property or Covered Costs and Expenses, except for Sections B.2. a., d., e., g., h. and i., which do not require a specific Sublimit of Insurance to be shown.

**1. COVERED PROPERTY**

**a. Building(s)** means the buildings or other structures at the Insured Location, including. . ..

\* \* \*

**b. Business Personal Property** located in or on the Buildings at the Insured Location or in the open (or in a vehicle) within 1,000 feet of the Insured Location, consisting of the following unless otherwise specified in the Coverage Declarations: . . .

\* \* \*

**h. "Outdoor Property":** This insurance applies to "Outdoor Property" at the Insured Location for loss or damage only by the following covered Causes of Loss:
 (1) Fire;

(2) Lightning;
(3) Explosion;
(4) Riot or civil commotion;
(5) Vandalism or malicious mischief; or
(6) Aircraft or vehicles.

This insurance also applies to the necessary and reasonable expense incurred by the Named Insured to remove debris of "Outdoor Property" at the Insured Location caused by or resulting from a Covered Cause of Loss listed above that occurs during the Policy period. Such expenses will be paid only if reported to the Company in writing within 180 days of the date of direct physical loss or damage. This will not increase the Sublimit of Insurance that applies to "Outdoor Property."

\* \* \*

16.     The Policy's insuring language in the "Property Coverage Form" (NC R1 00 08 19) provides "Debris Removal" coverage subject to the following terms and conditions:

## PROPERTY COVERAGE FORM
### (NC R1 00 08 19)

\*\*\*

## 2. COVERED COSTS AND EXPENSES

### a. Debris Removal

(1) The Company will pay the necessary and reasonable expense incurred by the Named Insured to remove debris of Covered Property, other than "Outdoor Property", *caused by or resulting from a Covered Cause of Loss that occurs during the Policy period*. Such expenses will be paid only if reported to the Company in writing within 180 days of the date of direct physical loss or damage. Coverage for the expense to remove debris of "Outdoor Property" is included in the Sublimits of Insurance provided separately under Section B.1.h of this Coverage Form.

(2) For this Debris Removal Coverage, the Company will pay up to 25% of:

(a) The amount the Company pays for the direct physical loss or damage to the Covered Property; plus

(b) The deductible in this Policy applicable to that direct physical loss or damage.

This limit is part of and not in addition to the Limit of Insurance that applies to the lost or damaged Covered Property.

(3) In no event will this Debris Removal Coverage apply to:

(a) Costs to extract "Pollutants" from land or water; or

(b) Costs to remove, restore or replace polluted land or water.

\* \* \*

17.    The Policy's insuring language in the "Property Coverage Form" (NC R1 00 08 19) contains a provision related to "Pollution Cleanup and Removal" coverage that incorporates by reference the "Exclusion of Pollutants and Asbestos Form" (NC R2 38 03 17) and is clarified by the "Asbestos Exclusion Advisory Notice to Policyholder" (NC R0 05 03 17), which provides "Limited Asbestos Coverage" in the amount of $25,000 that is subject to the following terms and conditions:

**PROPERTY COVERAGE FORM
(NC R1 00 08 19)**

\*\*\*

**2.  COVERED COSTS AND EXPENSES**

\* \* \*

**b.    Pollutant Cleanup and Removal:** See Exclusion of Pollutants and Asbestos Form (NC R2 38 03 17) that is included in this Policy.

\* \* \*

## EXCLUSION OF POLLUTANTS AND ASBESTOS FORM
### (NC R2 28 03 17)

\* \* \*

### ASBESTOS EXCLUSION AND LIMITED COVERAGE

**A.** This Policy only insures asbestos physically incorporated in an insured building or structure, and then that part of the asbestos which has been *physically damaged during the Policy period by one of the following Listed Perils*: *Fire; Explosion; Lightning; Windstorm (including hail); Collapse; Water Damage[11]; direct impact of a vehicle, aircraft, or vessel; Riot or civil commotion; vandalism or malicious mischief; or accidental discharge of fire protective equipment.*

This coverage is subject to all limitations in the Policy to which this form is attached and, in addition, to each of the following specific conditions and limitations:

1.  The said building or structure must be insured under this Policy for damage by that Listed Peril.
2.  *The Listed Peril must be the immediate, sole cause of the damage to the asbestos*.
3.  The Named Insured must report to the Company, in writing, the existence of the damage to the asbestos as soon as practicable after the Listed Peril first damaged the asbestos. However this Policy does not insure any such damage first reported to the Company more than 365 days after this Policy expires, terminates or is cancelled.
4.  Insurance provided under this Policy in respect of asbestos shall not include any sum relating to:
    a.  Any faults in the design, manufacture, or installation of the asbestos.
    b.  Asbestos not physically damaged by the Listed Peril, including any government or regulatory authority, direction or request of whatsoever nature relating to undamaged asbestos.

**B.** *The most the Company will pay for loss or damage for any one Insured Location which is attributed to the presence or possible presence of asbestos or caused by or resulting from asbestos, including by not limited to costs to prepare abatement protocols or plans, and costs or asbestos*

---

[11] The Policy's "Property Coverage Form" defines "Water Damage" as the "accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam."

*removal and abatement, as limited in item A, is **$25,000** for any Insured Location, in aggregate, during any one Policy period.*

**C.** Except as set forth in the foregoing Sections **A** and **B**, this Policy does not insure asbestos or any sum relating thereto, including any loss, damage, expense or increased cost caused by, resulting from, contributed to or made worse by asbestos.

\* \* \*

**ASBESTOS EXCLUSION**
**ADVISORY NOTICE TO POLICYHOLDER**
**(NC R0 05 03 17)**

\* \* \*

This Notice provides information concerning the following form, which applies to your new or renewal Policy being issued by the Company:

NC R2 38 03 17 EXCLUSION OF POLLUTANTS AND ASBESTOS FORM

This form makes an explicit statement regarding a risk that is not covered under your Commercial Property insurance. It points out that there is no coverage under such insurance for loss or damage caused by or resulting from asbestos, *subject to a narrow exception that provides certain asbestos coverage limited to $25,000 in the aggregate for any one Insured Location in any one Policy period*. The exclusion in this form applies to all coverages provided by your Commercial Property insurance, including (if any) property damage and business income coverages.

\* \* \*

Third Coast denies that Greenlite Holdings is entitled to any asbestos removal coverage under the Policy.

18.     The Policy's insuring language in the "Property Coverage Form" (NC R1 00 08 19) provides "Ordinance or Law" coverage subject to the following terms and conditions:

## PROPERTY COVERAGE FORM
## (NC R1 00 08 19)

\* \* \*

## 2.  COVERED COSTS AND EXPENSES

\* \* \*

**f.   Ordinance or Law:** If a Covered Cause of Loss causes direct physical loss or damage to Covered Property, and such direct physical loss or damage alone and directly causes the enforcement of any ordinance or law in force at the time of loss regulating the construction or repair of buildings or establishing zoning or land use requirements at the Insured Location, the Company will pay for:

(1) **The loss to the undamaged portion of a covered building** at the Insured Location caused by such enforcement that requires the demolition of parts of the same property not damaged by a Covered Cause of Loss.

The most the Company will pay for loss or damage under this portion of Ordinance or Law coverage is the Sublimit of Insurance specified for Ordinance or Law – Undamaged Portion shown in the Coverage Declarations.

\* \* \*

(3) **The increased cost of repair or reconstruction of the Covered Property** caused by such enforcement when the Covered Property is incurred for replacement cost. If the covered building is repaired or reconstructed, it must be intended for similar occupancy as the current building, unless otherwise required by zoning or land use ordinance or law.

*The Company will not pay for increased construction costs until the Covered Property is actually repaired or reconstructed by the Named Insured, at the same location or elsewhere, and unless the repair or replacement is made as soon as reasonably possible but not to exceed 365 days after the loss or damage occurs.*

The most the Company will pay for loss or damage under this portion of Ordinance or Law coverage is the increased cost of repair or reconstruction:

(a) Of a building of the same size and at the same premises, or another premises if required by the ordinance or law; and

(b) Limited to the minimum requirements of such ordinance or law regulating the repair of reconstruction of the damaged property on the same site, which is not to exceed the Sublimit of Insurance specified for Ordinance of Law – Increased Cost of Construction shown in the Coverage Declarations.[2]

(4) *Ordinance or Law Coverages do not apply to*:

(a) *"Vacant" buildings*.[3]

(b) Any loss due to the Named Insured's failure to comply with any ordinance or law that the Named Insured was required to comply with before the loss, even if the Covered Property was undamaged.

(c) Costs associated with the enforcement of any ordinance or law that requires the Named Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "Pollutants".

(d) Costs associated with the enforcement of any ordinance or law where such enforcement is not he direct result of direct physical loss or damage to Covered Property, even if the enforcement of the ordinance or law results from an inspection of the Covered Property that sustained a Covered Cause of Loss.

---

[2] The limit of liability for Ordinance or Law – Increased Cost of Construction is $1,000,000.

[3] The Policy's "Property Coverage Form" defines "Vacant" as "more than 50% of the square footage of the entire building is not: (1) Rented to or occupied by a lessee or sub-lessee; or (2) Used by the building owner to conduct customary operations."

19. The Policy's insuring language in the "Property Coverage Form" (NC R1 00 08 19) provides "Protection of Property" coverage to cover the reasonable and necessary costs incurred for the purpose of reducing the loss under the Policy, which is subject to the following terms and conditions:

**PROPERTY COVERAGE FORM**
**(NC R1 00 08 19)**

* * *

**2. COVERED COSTS AND EXPENSES**

* * *

    **h. Protection of Property:** The Company will pay the necessary and reasonable expenses actually incurred by the Named Insured to temporarily safeguard Covered Property against the threat of imminent direct physical loss or damage by a Covered Cause of Loss. This Coverage does not apply to any expenses to which the above Preservation of Property coverage applies.

* * *

20. The Policy generally does not insure against loss or damage to "Covered Property" that pre-exists the inception of the Policy, or loss or damage to "Covered Property" or "Covered Costs and Expenses" caused by or resulting from a Policy "Exclusion" and/or "Limitation", including, but not limited to, wear and tear, deterioration, latent defects, faulty, inadequate or defective construction, materials, repairs or maintenance, cosmetic damage, or interior water damage that enters through a storm created opening in the roof or walls. The Policy's "Property and Costs Not Covered", "Exclusions", and "Limitations" provisions provide as follows:

**PROPERTY COVERAGE FORM**
**(NC R1 00 08 19)**
\* \* \*

**C. PROPERTY AND COSTS NOT COVERED:** Unless the following property or costs are added by endorsement to the Policy, Covered Property and Covered Costs and Expenses do not include:

\* \* \*

6. *Property sold by the Named Insured under an installment plan, conditional sale, trust agreement or other deferred payment plan after delivery to the purchasers*;

\* \* \*

17. The costs to repair or replace pre-existing loss or damage to any building or structure, or any resulting loss or damage, at any property where such pre-existing loss or damage was caused by, resulted from, or was contributed to by, and cause of loss, whether covered or uncovered, occurring prior to an Occurrence.

18. The Company will not pay for any expenses incurred, directed, or billed by or payable to public insurance adjusters or their associates or subsidiaries; expenses of preparing estimates, bids, proposals or similar documentation of property damage or loss, including but not limited to fees charged engineers or other consultants, fees charged by property management companies of overseeing, administering or managing (i) construction, repairs or replacements of property, or (ii) insurance claims; or any costs as provided in the General Conditions – Section C. (Appraisal).

**D.  EXCLUSIONS**
1. The Company will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
   \* \* \*
   **h.  ORDINANCE OR LAW:** The enforcement of any ordinance of law:
   (1) Regulating the construction, use or repair of any property; or
   (2) Requiring the tearing down of any property, including the cost of removing its debris;

except as provided in Covered Costs and Expenses in Section B.2.f (Ordinance or Law).

The Ordinance or Law exclusion applies whether the loss results from an ordinance or law that is enforced even if the property has not been damaged; or from the increased costs incurred to comply with an ordinance of law in the course of repair, construction, reconstruction, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

\* \* \*

2. *The Company will not pay for loss or damage caused by or resulting from any of the following:*

\* \* \*

c. (1) *Wear and tear or depletion*;
   (2) *Rust, corrosion, erosion, decay, deterioration, hidden or latent defect  or any quality in the property that causes it to damage of destroy itself*;
   (3) *Settling, cracking, shrinking, bulging or expansion*;

\* \* \*

However, in the event an excluded cause of loss that is listed in 2.c.(1) through (6) above results in fire, explosion, smoke, "Water Damage", "Sinkhole Collapse" or falling objects, the Company will pay for the loss or damage caused by that fire, explosion, smoke, "Water Damage", Sinkhole Collapse" or falling objects.

\* \* \*

m. *"Cosmetic loss or damage"*[4]

---

[4] The Policy's "Property Coverage Form" defines "Cosmetic Loss or Damage" as "damage to any portion of the roof coverings, carports, gutters or downspouts that alters only the physical appearance of any such item (including but not limited to marring, pitting, scratches or dents) but does not result in (i) damage that allows the penetration of water through the item or (ii) the failure of the item to perform its intended function of keeping out the elements for the remainder of its original, useful life. Roof coverings means the roofing material exposed to the weather, the underlayments applied for moisture protection, and all flashing and edging required in the replacement of the coverings. However, "cosmetic loss or damage" does not include damage to asphalt shingle roof coverings."

\* \* \*

3.  *The Company will not pay for loss or damage caused by or resulting from any of the following*:

\* \* \*

c.  *Faulty, inadequate or defective*:
(1) Planning, zoning, development, surveying, siting;
(2) *Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction*;
(3) Materials used in repair construction, renovation or remodeling; or
(4) Maintenance;

of part or all of any property on or off an Insured Location.

However, in the event an excluded cause of loss that is listed in 3.c (1) through 3.c. (4) above results in a Covered Cause of Loss, this exclusion does not apply to loss or damage caused by that resulting Covered Cause of Loss. . .[5]

\* \* \*

**E. Limitations**

**1.** The Company will not pay for loss of or damage to property, as described and limited in this section. In addition, the company will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

\* \* \*

c.  The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, ice, sand or dust enters; or

---

[5] The Policy's "Property Coverage Form" defines "Covered Cause of Loss" as "risks of direct physical loss or damage unless the loss or damage is excluded in Section D. (Exclusions); limited in Section E. (Limitations); excluded or limited in the Coverage Declarations or Statement of Values; or excluded or limited by endorsements or other policy forms.

(2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

\* \* \*

21.     The Policy provides "Rental Value" coverage for any proven loss in fair rental value caused by the necessary "Suspension" of  Greenlite Holdings' "Operations" during the "Period of Restoration", subject to the "Exclusions", "Limitations", and "Additional Condition[s]" contained in the Policy's "Business Income Coverage Form Including Extra Expense Form", which provides as follows:

**BUSINESS INCOME COVERAGE FORM INCLUDING EXTRA EXPENSE FORM**
**(NC R1 01 03 19)**

\* \* \*

**A. COVERAGE:** The Company will pay for the actual loss of Business Income and/or Rental Value sustained by the Named Insured due to the necessary "Suspension" of the Named Insured's "Operations" during the "Period of Restoration". The Company will also pay for the actual and necessary Extra Expense the Named Insured incurs during the "Period of Restoration". The "Suspension" and the Extra Expense must be caused by direct physical loss or damage to Covered Property, including personal property in the open (or in a vehicle) within 1,000 feet, at the Insured Location

- Which is described in the most recent Statement of Values or Business Income Work Sheet(s) or other documentation on file with the Company and
- For which a value for the exposure at the premises to which this form applies has been reported.

The loss or damage must be caused by or result from a Covered Cause of Loss.

Coverage is provided as described below only when a Sublimit of Insurance is shown for the specified coverage in the Coverage Declarations.

\* \* \*

**2. Rental Value:** Rental Value means the:

a. Total anticipated rental income;

b. Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise by the obligation of the Named Insured; and

c.  Fair rental value of any portion of the Insured Location that is occupied by the Named Insured;

less any operating expenses that do not continue from tenant occupancy of the premises as furnished and equipped by the Named Insured.

\* \* \*

**D. EXCLUSIONS**

1. All of the exclusions contained in Section D. of the Property Coverage Form apply to this coverage form. . ..

\* \* \*

**E. LIMITATIONS:** Limitations contained in Section E. of the Property Coverage Form apply to this coverage form. . ..

\* \* \*

**G. ADDITIONAL CONDITION:** The following condition applies in addition to the conditions contained in the General Conditions:

**Loss Determination**

5.  The amount of Business Income or Rental Value loss will be determined based on:

a.  The New Income or Rental Value of the business before the direct physical loss or damage occurred;

b.  The likely Net Income or Rental Value of the business if no direct physical loss or damage had occurred, but not including any likely increase in Net Income or Rental Value attributable to an increase in the volume of business as a result of favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

c.  The operating expenses, including "Ordinary Payroll Expenses" to the extent insured, necessary to resume "Operations" with the same quality of service that existed just before the direct physical loss or damage; and

d.  Other relevant sources of information, including:

(1) The financial records and accounting procedures of the Named Insured;

(2) Bills, invoices and other vouchers; and

(3) Deeds, liens, contracts or leases.

\* \* \*

22.    The Policy's "General Conditions" form contains several conditions

precedent that must be satisfied before Greenlite Holdings can recover the value of its claim

under the Policy. These conditions (which include the duty to exercise reasonable care to safeguard the property from further damage) are described in the Policy's "General Conditions" form as follows:

## GENERAL CONDITIONS
### (NC R5 02 08 19)

All coverages included in this Policy are subject to the following conditions.

* * *

**B.  APPLICATION OF DEDUCTIBLES**

    1.  Any deductibles that apply are specified in the Coverage Declarations or in the forms or endorsements attached to this Policy.

* * *

**N.  SUBLIMITS OF INSURANCE:** *The most the Company will pay for all loss or damage for any one Occurrence under this Policy is the Policy Limit shown in the Coverage Declarations*, subject to any applicable Sublimits of Insurance. Sublimit(s) of Insurance shown in the Coverage Declarations, Schedule(s), Coverage form(s) or endorsement(s) are included within, and do not increase, the Policy Limit.

**O.  LOSS PAYMENT**

* * *

    4.  *The Company will not pay the Named Insured more than the Named Insured's financial interest in the Covered Property*.

* * *

**S.  NOTICE OF LOSS AND DUTIES IN THE EVENT OF LOSS OR DAMAGE**

    1.  As a condition precedent to coverage under this Policy, the Named Insured must see that the following are done in the event of loss or damage:

* * *

        b.  Give the Company prompt written notice of the loss or damage. Notice should include a description of the property

involved, and a description of how, when, and where the loss or damaged occurred.

\* \* \*

d.   _Take all reasonable steps to protect the Covered Property from further damage, and keep a record of expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, the Company will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination_.

e.   At the request of the Company, give the Company complete inventories of the damaged and undamaged property, including quantities, costs, values and amount of loss claimed.

\* \* \*

h.   Send the Company a signed, sworn proof of loss containing the information that the Company requests to investigate the claim. The Named Insured must do this within sixty (60) days after the Company's request. The Company will supply the Named Insured with the necessary forms.

\* \* \*

23.   The Policy's "Replacement Cost Form" provides "Replacement Cost Value"

coverage subject to the following terms and conditions:

## REPLACEMENT COST FORM
### (NC R5 05 03 19)

This modifies the Property Coverage Form.

The following Valuation Provisions are added:

**A. REPLACEMENT COST:** In the event of a covered loss or damage, the Company will determine the value of the deterioration, depreciation, obsolescence and depletion, except as otherwise provided in this form or as stipulated by any other endorsement(s) to this Policy. This replacement cost valuation is subject to the following conditions:

1.   The Company will not pay more on a replacement cost basis than the least of:

    a.  The cost to repair, rebuild or replace, at the same site, the lost, damaged or destroyed property, with the other property of comparable size, material and quality; or

    b.  The actual amount spent by the Named Insured that is necessary for it to repair, rebuild or replace the lost, damaged or destroyed property; or

    c.  Any Limit of Insurance or Sublimit of Insurance applicable to the lost, damaged or destroyed property.

2.   *The Company will not pay for any loss or damage on a replacement cost basis until the property is repaired, rebuilt or replaced by the Named Insured, and then only if such repair, rebuilding or replacement is made within 365 days after the loss or damage occurs. If the property is not repaired, rebuilt or replaced by the Named Insured within 365 days after the loss or damage occurs, the value of the property will be determined at Actual Cash Value.*[6]

\* \* \*

## B.  REPLACEMENT COST EXCEPTIONS

\* \* \*

12.   *Vacant buildings will be valued at Actual Cash Value.*

\* \* \*

24.    Greenlite Holdings' claims and the damages it seeks are barred because it failed to comply with or satisfy the Policy's conditions precedent.

25.    Greenlite Holdings' claims and the damages it seeks are barred because granting it the relief sought would result in unjust enrichment.

26.    Pursuant to OKLA. STAT. tit. 23, § 9.1, any award of punitive damages must be supported by clear and convincing evidence.

---

[6] The Policy's "Property Coverage Form" defines "Actual Cash Value" as "the cost to repair, rebuild or replace the lost or damaged property, at the time and place of the loss, with other property of comparable size, material and quality, less allowance for physical deterioration, depreciation, obsolescence and depletion."

27.     Greenlite Holdings' extra-contractual claims are barred, including, but not limited to, its "unfair settlement practices" claims because a bona fide controversy existed and continues to exist concerning coverage and Greenlite Holdings' entitlement, if any, to any insurance benefits from Third Coast. Third Coast is permitted to value claims differently from insured/assignees and others without facing extra-contractual liability. Third Coast's conduct was reasonable based upon its claim investigation. Since a *bona fide* controversy existed and continues to exist regarding the existence of and valuation of Greenlite Holdings insurance claim and liability under the claim is not reasonably clear at this time, all of Greenlite Holdings' extra-contractual claims are barred.

28.     Third Coast invokes its rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and affirmatively pleads that Greenlite Holdings' pleading for punitive damages and/or exemplary damages is violative of the Fourteenth Amendment. Further, any such assessment and award of punitive damages in this case are violative of the Eighth Amendment of the United States Constitution as it is applied to the States through the Fourteenth Amendment of the United States Constitution, in that such awards potentially constitute an excessive fine imposed without the protections of fundamental due process. Accordingly, Third Coast invokes its rights under the Eighth and Fourteenth Amendments of the United States Constitution and respectfully request that this Court disallow any award of punitive and/or exemplary damages in as much as an award, in this case, would be violative of Third Coast's constitutional rights. Finally, Third Coast invokes its rights

under the Fifth Amendment of the United States Constitution, wherein it reads in part, "[n]o person shall be . . . deprived of . . . property without due process of law . . . ."

29.     Greenlite Holdings' First Amended Petition fails to state a claim against Third Coast upon which relief may be granted, and therefore Greenlite Holdings is not entitled to recover herein.

30.     Third Coast expressly denies it breached the insurance contract with Greenlite Holdings.

31.     Third Coast did not breach any duty to Greenlite Holdings and is not the cause in fact or proximate cause of Greenlite Holdings' damages, if any.

32.     Third Coast expressly denies it acted in bad faith.

33.     Greenlite Holdings materially breached its obligations under the insurance contract at issue.

34.     Greenlite Holdings' claims are subject to all defenses and rights Third Coast has under the insurance contract at issue.

35.     Greenlite Holdings' claims are barred by estoppel, waiver, and/or the doctrine of laches.

36.     Greenlite Holdings' claims are premature/not ripe.

37.     Third Coast reserves the right to either add or withdraw affirmative defenses as discovery warrants.

## PRAYER

**THEREFORE**, Third Coast hereby prays that the Court grant the following relief:

    (a) enter judgment in favor of Third Coast and against Greenlite Holdings on all claims and causes of action contained in the First Amended Petition and any subsequently filed petition;

    (b) dismiss, with prejudice, all claims and causes of action contained in Greenlite Holdings' First Amended Petition and any subsequently filed petition;

    (c) award costs to Third Coast against Greenlite Holdings; and

    (d) render such other and further relief as the Court deems just and equitable.

Furthermore, and in the alternative, Third Coast's prays that, after trial by jury, it be awarded the relief requested above, and all such other further relief, whether at law or in equity, to which it may show itself justly entitled.

                Respectfully submitted,

                */s/ Shannon S. Bell*
                Derrick T. DeWitt, OBA #18044
                Thomas A. Paruolo, OBA #18442
                Shannon S. Bell, OBA #33648
                DEWITT, PARUOLO & MEEK, PLLC
                P.O. Box 138800
                Oklahoma City, OK 73113
                T: (405) 705-3600
                F: (405) 705-2573
                dewitt@46legal.com
                tom@46legal.com
                sbell@46legal.com
                ***Attorneys for Defendant Third Coast***
                ***Insurance Company***

## CERTIFICATE OF SERVICE

This is to certify that on the 30th day of June, 2021, the above document was electronically transmitted to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Steven S. Mansell
Kenneth G. Cole
Keith F. Givens
MANSELL ENGLE & COLE
204 North Robinson, 21st Floor
Oklahoma City, Oklahoma 73102
kgivens@meclaw.net

*ATTORNEYS FOR PLAINTIFF*
*GREENLITE HOLDINGS, LLC*

/s/ Shannon S. Bell
Shannon S. Bell